

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JOSEPH EVANS, SR.,

    Petitioner,

v.                              Civil Action No. **3:07CV326**

**DIRECTOR OF
DEPARTMENT OF CORRECTIONS,**

    Respondent.

### MEMORANDUM OPINION

Joseph Evans, Sr., a Virginia state prisoner proceeding pro se, brings this petition for a writ of habeas corpus challenging his conviction in the Circuit Court for the City of Danville ("Circuit Court"). Respondent has moved to dismiss. Evans has responded. The matter is ripe for adjudication.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 7, 2005, Evans was charged with possession of cocaine with intent to distribute in violation of Virginia Code § 18.2-248(c). On January 5, 2006, the Commonwealth provided counsel for Evans with a list of Evans's prior convictions. Due to Evans's prior conviction for sale of cocaine, his potential maximum sentence was life imprisonment.

On January 27, 2006, the Commonwealth offered Evans a plea agreement which provided, in relevant part, that Evans would receive a sentence of eight years incarceration, would not be

subject to any fines, and that any prior suspended sentence would not be revoked. That same day, counsel visited Evans in jail to inform him of the plea offer. He also presented Evans with a letter detailing why he believed Evans should agree to the plea. However, counsel's letter incorrectly stated that Evans faced a potential maximum sentence of forty years of imprisonment, not life imprisonment.[1] In this letter, counsel repeatedly urged Evans to accept the plea agreement. Counsel explained that Evans would likely receive the maximum sentence of forty years because it was "historically true that juries in this jurisdiction are very harsh in drug cases" and "cannot give suspended time." Jan. 27, 2006 Letter from Counsel (Resp.'s Mot. to Dismiss, Ex. 1; Attach. to Petr.'s Fed. Hab. Pet.) Counsel also stated that "[i]t is my opinion that the evidence in this case places you in a reasonably high probability of a finding of guilty." Jan. 27, 2006 Letter

---

[1] The statements in the record conflict as to whether counsel realized his mistake and informed Evans that he faced a potential maximum sentence of life imprisonment later on that same day, or whether Evans was not informed of that fact until the day of his trial, three days later. Counsel avers that he realized his mistake later that day and verbally informed Evans that the maximum penalty was life, not forty years, but that Evans response was: "what difference does that make, I'm 56 years old. Forty years is life to me." (Resp.'s Mot. to Dismiss, Ex. 1 ¶ 9.) Evans asserts that he did not find out that he faced a maximum potential sentence of forty years until his trial.

from Counsel (Resp.'s Mot. to Dismiss, Ex. 1; Attach. to Petr.'s Fed. Hab. Pet.) Counsel further stated:

> Your position is that . . . . [y]ou deny that you have cooked crack cocaine and that you knew of the distribution of the drugs by [your co-defendants]. . . .
>
> . . . .
>
> You have consistently said that you wanted the matter tried and that you do not wish to accept a plea agreement. We have discussed the issue many times. It is my professional opinion that you are making a mistake and that you should accept the plea agreement. . . . Frankly, I hope you will reconsider your decision.

Jan. 27, 2006 Letter from Counsel (Resp.'s Mot. to Dismiss, Ex. 1; Attach. to Petr.'s Fed. Hab. Pet.) At the bottom of this letter, Evans signed his name and confirmed that he did not want to accept the plea agreement. The plea offer expired at 5:00 p.m. that day.

On January 30, 2006, the day of trial, a "surprise witness" was introduced by the Commonwealth who would have provided "devastating testimony" to Evans's case. (Petr.'s Br. in Supp. of Fed. Hab. Pet. 2-3.) Evans alleges that "[u]pon learning of the surprise witness . . . [and] that the potential sentence was not 40 years as Counsel had [previously] stated . . . but actually a life sentence," he no longer wanted to proceed with a jury trial. (Petr.'s Br. in Supp. of Fed. Hab. Pet. 2.)

Evans then pled guilty and was convicted of possession of cocaine with the intent to distribute, second offense, in violation of Virginia Code § 18.2-248(c). Thereafter, the Circuit Court sentenced Evans to forty years incarceration with twenty-five years

3

suspended leaving Evans with an active term of fifteen years of incarceration. (Petr.'s Br. in Supp. of Fed. Hab. Pet. 3.) Evans did not note an appeal.

On September 7, 2006, Evans filed a habeas corpus petition with the Supreme Court of Virginia. In the state habeas petition, Evans claimed that he was denied effective assistance of counsel during the plea process. The question he presented to the Supreme Court of Virginia was:

> Whether, in light of the Supreme Court's holding in Hill v. Lockhart, 474 U.S. 53, 106 S.Ct. 366 (1985), the failure of Counsel to inform petitioner during the pre-trial plea process, of the relevant law regarding the maximum potential sentence upon conviction, which caused petitioner to inadvertently reject a pre-trial plea offer of eight (8) years, and subsequently had to enter another guilty plea upon notice by the Court on the day of trial that he was indeed facing a potential life sentence, and thereafter received a (40) year sentence satisfies the *Strickland* test for finding ineffective assistance of counsel.

(Petr.'s State Hab. Pet. (i)). On April 4, 2007, the Supreme Court of Virginia dismissed Evans's habeas petition and denied his March 19, 2007 motion to amend.[2]

---

[2] Evans filed two other motions to amend with the Supreme Court of Virginia. On April 5, 2007, the Chief Deputy Clerk informed Evans that because the Supreme Court of Virginia had entered an order dismissing his petition and denying his March 19, 2007 motion to amend, no further action would be taken in response to the two subsequent motions that Evans had filed.

4

## II.   GROUNDS FOR FEDERAL HABEAS RELIEF

On May 31, 2007, Evans filed his federal habeas petition and raised the following claims:

Claim One:     Counsel's representation "during the plea process" was deficient. (Petr.'s Br. in Supp. of Fed. Hab. Pet. 8.)

Claim Two:     Counsel's ineffectiveness during the plea process prejudiced Petitioner at sentencing. (Petr.'s Br. in Supp. of Fed. Hab. Pet. 16.)

Claim Three:   Counsel was ineffective for failing to object to a surprise witness being introduced after the jury had been empaneled. (Petr.'s Br. in Supp. of Fed. Hab. Pet. 19.)

Claim Four:    The Supreme Court of Virginia erred in denying Petitioner's three motions for leave to amend his habeas petition, which showed specific relevant facts in support of his claim.

On August 8, 2007, Evans filed a motion for leave to amend his habeas petition with this Court in which he alleged that:

Claim Five:    Counsel was ineffective at sentencing because Petitioner's son's criminal history was erroneously attributed to Petitioner for purposes of calculating Petitioner's criminal background history.

Claim Four, however, is subject to summary dismissal because any alleged errors in the state habeas proceeding would not provide a suitable ground for federal habeas relief. See Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (["C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief."). This is so because Evans is detained as a result of the underlying state

5

conviction, not the state collateral proceeding. See <u>Lawrence v. Branker</u>, ___ F.3d ___ (4th Cir. Feb. 22, 2008), <u>available at</u> 2008 WL 466743, at *13. Accordingly, Claim Four will be DISMISSED.

### III. EXHAUSTION AND PROCEDURAL DEFAULT

"In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal habeas relief." <u>Breard v. Pruett</u>, 134 F.3d 615, 619 (4th Cir. 1998) (<u>citing</u> <u>Matthews v. Evatt</u>, 105 F.3d 907, 910-11 (4th Cir. 1997)). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." <u>Matthews</u>, 105 F.3d at 911 (<u>citing</u> <u>Spencer v. Murray</u>, 18 F.3d 237, 239 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." <u>Breard</u>, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." <u>Id.</u> (<u>citing</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991)). Furthermore, a federal habeas petitioner also procedurally defaults

claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court is precluded from reviewing the merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255, 262 (1989).

Here, Evans did not present Claim Three to the Supreme Court of Virginia in his first petition for a writ of habeas corpus. If Evans were to now attempt to file a second habeas petition in order to present Claim Three to the Supreme Court of Virginia, that court would find the claim procedurally barred pursuant to Virginia Code section 8.01-654(B)(2).[3] This statute requires habeas petitioners to raise all available grounds for relief in their first state petition for a writ of habeas corpus. The United States Supreme Court has recognized that section 8.01-654(B)(2) constitutes an independent and adequate state law that precludes federal review. See Gray v. Netherland, 518 U.S. 152, 162 (1996); Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997). Evans has made no

---

[3] Va. Code Ann. § 8.01-654(B)(2) (2007) provides, in pertinent part, that a petition for writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing. . . . No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition."

7

attempt to demonstrate cause to excuse his default. Accordingly, Claim Three is procedurally defaulted and will be DISMISSED.

For these same reasons, the Court must reject Evans's motion to amend his federal habeas claim to assert Claim Five. It is readily apparent that Claim Five would also be procedurally barred because it was not raised in Evans's state habeas petition. See Va. Code Ann. § 8.01-654(B)(2); Gray, 518 U.S. at 162; Pope, 113 F.3d at 1372. Because allowing Evans to amend his petition to assert Claim Five would be futile, see United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000), Evans's motion to amend (Docket No. 14) will be DENIED and Claim Five will be DISMISSED.

### IV. THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

In order to obtain federal relief, an inmate must demonstrate that his rights under the Constitution, law, or treaties of the United States were violated. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Furthermore, this Court's ability to grant relief by way of a writ of habeas corpus is circumscribed by 28 U.S.C. § 2254(d) and § 2254(e)(1). Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim adjudicated on the merits in the state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

8

>established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has clarified that the phrases "contrary to" and "unreasonable application of" in 28 U.S.C. § 2254(d)(1) have independent meanings. Penry v. Johnson, 532 U.S. 782, 792 (2001). "A decision is 'contrary to' clearly established federal law if it either applies a legal rule that contradicts prior Supreme Court holdings or reaches a conclusion different from that of the Supreme Court 'on a set of materially indistinguishable facts.'" Buckner v. Polk, 453 F.3d 195, 198 (4th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)), cert. denied, 127 S. Ct. 1817 (2007). In contrast, "[a] decision is an 'unreasonable application' of clearly established federal law if it 'unreasonably applies' a Supreme Court precedent to the facts of the petitioner's claim." Id. (quoting Williams, 529 U.S. at 413). Thus, section 2254(d) places an additional hurdle before federal habeas petitioners as they must demonstrate not only that the state court's decision was erroneous or incorrect, but also that it was unreasonable. See Williams, 529 U.S. at 412-13. Under 28 U.S.C. § 2254(e)(1), a factual finding by a state court is presumed correct absent clear and convincing

evidence to the contrary. See Wolfe v. Weisner, 488 F.3d 234, 239 (4th Cir. 2007).

### V.    INEFFECTIVE ASSISTANCE OF COUNSEL

In Claims One and Two, Evans contends that he was denied the effective assistance of counsel because counsel incorrectly informed him that he faced a maximum potential sentence of forty years, which purportedly led him to reject the initial plea offer of eight years and then receive a higher sentence of fifteen years of imprisonment. In Strickland v. Washington, the Supreme Court held that to demonstrate ineffective assistance of counsel, a petitioner first must show that counsel's representation was deficient and then must establish that the deficient performance prejudiced the petitioner. 466 U.S. 668, 687 (1984). To prove constitutionally deficient performance, the petitioner must show that his or her counsel's performance fell below an objective standard of reasonableness, as determined by comparison to "prevailing professional norms." Strickland, 466 U.S. at 688. Even if the petitioner can meet this standard, he or she must also establish prejudice by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Strickland analysis also applies to claims of ineffective assistance of counsel involving counsel's advice offered during the plea process. Hill v. Lockhart, 474 U.S. 52, 58 (1985). A petitioner who asserts that his counsel was constitutionally ineffective for encouraging him to plead guilty must prove both that his counsel's performance was deficient and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. Courts have since applied the Strickland/Hill test in cases where, as here, counsel's "ineffective assistance allegedly caused the defendant to reject a plea agreement and proceed to trial." United States v. Merritt, 102 F. App'x 303, 307 (4th Cir. 2004) (Nos. 02-7206, 02-7207, 02-7208 & 02-7209), available at 2004 WL 1418432, at *3 (citing Magana v. Hofbauer, 263 F.3d 542, 547-48 (6th Cir. 2001); United States v. Gordon, 156 F.3d 376, 379-81 (2d Cir. 1998); and United States v. Day, 969 F.2d 39, 42-43 (3d Cir. 1992)).

In Merritt, the Fourth Circuit stated that under Strickland/Hill, the proper inquiry is first, whether the defendant has demonstrated "that his trial counsel provided him gross misadvice regarding his sentencing exposure, and, if so, whether but for this gross misadvice, there is a reasonable probability that [the defendant] would have accepted the plea agreement specifying a [lower] sentence of . . . imprisonment." 102 F. App'x

11

at 307; Ordinarily, courts begin the Strickland analysis by examining the deficiency prong of Strickland. See Bowie v. Branker, 512 F.3d 112, 119 (4th Cir. 2008). Here, however, the state habeas court did not make any factual finding as to whether or not counsel was deficient but, instead, determined that Evans could not demonstrate prejudice. The state habeas court found that "[e]ven if petitioner did not discover the error until the day of trial," his claim "fails to satisfy the 'prejudice' prong of the two-part test enunciated in Strickland." (Habeas Op. 2.) This Court, therefore, turns directly to the prejudice prong.

Courts generally reject a defendant's self-serving statement that, but for counsel's misadvice, the defendant would have accepted the plea offer, unless such an assertion is coupled with some objective evidence tending to support the defendant's claim that he relied on counsel's erroneous advice. See Merritt, 102 F. App'x at 307-08 (citing Gordon, 156 F.3d at 381; Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986)); see also Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1298 n.19 (4th Cir. 1992). In this regard, counsel's "gross misadvice" about the maximum potential sentence the defendant would be exposed to if he rejected the plea offer can serve as objective evidence to support a defendant's claim of prejudice. See Merritt, 102 F. App'x at 307; see also Magana, 263 F.3d at 550-52 (finding that counsel who discouraged

12

defendant from accepting plea offer of ten years and erroneously informed defendant that he faced a maximum potential sentence of ten years if he was found guilty at trial, had provided "gross misadvice" when defendant received twenty-year sentence at trial, and that this "large" sentencing disparity was objective evidence demonstrating a "reasonable probability" of a different outcome); Gordon, 156 F.3d at 377, 380-81 (recognizing ineffective assistance claim where counsel "grossly underestimated" the defendant's potential sentence of 262 to 327 months and informed defendant that he faced a sentence of only ten years, thus causing defendant to reject plea offer for 92 through 115 months and receive a sentence of 210 months of imprisonment); cf. Day, 969 F.2d at 45-46 (3d Cir. 1992) (requiring defendant provide additional corroborating evidence, beyond the defendant's own self-serving statements and the gross disparity between the ten-year sentence defendant's attorney allegedly told him he faced and the twenty-one year sentence he received).

On this record, Evans fails to establish prejudice for three reasons. First, the undisputed facts establish that at the time Evans decided to reject the plea agreement, he was fifty-six years old and counsel had already informed him that he would likely be found guilty and receive the maximum sentence of forty years of imprisonment if he did not accept the plea offer. In light of Petitioner's age, objectively, there does not appear to be a

13

substantial difference between a forty-year sentence, which would have resulted in Petitioner being released when he was ninety-six years old, and a sentence of life imprisonment. Furthermore, unlike the defendants in Magana, Gordon, and Day, the sentence Evans actually received, fifteen years of imprisonment, was lower than the forty-year sentence counsel had initially misinformed him was the maximum potential sentence he faced, not higher.

Second, Evans admits that his counsel repeatedly urged him to accept the plea offer. Despite this advice, Evans informs this Court that he believed that a trial could possibly result in an outcome favorable to the defense, insisted on going to trial, and refused to accept the plea. (Petr.'s Br. in Supp. of Fed. Hab. Pet. 19.)

Finally, Evans states that after he found out, on the day of trial, about a "surprise witness" who would provide "devastating testimony," his opinion on the chances of his success begin to waver. Thereafter, he decided to change his plea to guilty. Although Evans contends that this decision was also based, in part, on having learned that he faced a life sentence and not forty years of imprisonment, Evans has offered no plausible evidence to support his own self-serving statement that he would have accepted the original plea offer had he known he faced a life sentence. As the United States Court of Appeals for the Fourth Circuit noted in Fields, when "[n]othing in the record establishes that [the

14

petitioner] would have consummated the earlier plea agreements," the petitioner's "post hoc 'bald assertion' . . . that he would have accepted the [earlier] plea offers" does not suffice. 956 F.2d at 1298 n.19.

Given Evans strong desire to proceed to trial and the limited impact of counsel's purported misadvice, the Court cannot conclude that the state habeas court acted unreasonably or contrary to clearly established Supreme Court precedent in finding that Evans had not established a reasonable probability that the outcome would have been different but for counsel's misadvice, as required by Strickland's prejudice prong. See 28 U.S.C. § 2254(d). Accordingly, Claims One and Two will be DISMISSED.

## VI. CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss (Docket No. 11) will be GRANTED. Evans's petition for a writ of habeas corpus (Docket No. 1) and his request for an evidentiary hearing (Docket No. 16) will be DENIED. This action will be DISMISSED.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion to counsel of record.

An appropriate Order shall accompany this Memorandum Opinion.

It is so ORDERED.

                                               /s/              REP
                                     Robert E. Payne
                                     Senior United States District Judge

Richmond, Virginia
Date: MAR 24 2008